| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | ONLINE PUBLICATION ONLY |

ROYAL DISPATCH SERVICES, INC.,

                              Plaintiff,

        - versus -

UBS FINANCIAL SERVICES, INC.

                             Defendant.

MEMORANDUM
AND ORDER
12-CV-2032 (JG) (RLM)

A P P E A R A N C E S:

    PIKE & PIKE, P.C.
        1921 Bellmore Ave.
        Bellmore, NY 11710
    By:    Laurence I. Cohen
        *Attorney for Plaintiff*

    RIKER, DANZIG, SCHERER, HYLAND & PERRETTI LLP
        500 Fifth Avenue, 49th Floor
        New York, NY 10110
    By:    Julian W. Wells
        *Attorney for Defendant*

JOHN GLEESON, United States District Judge:

        Royal Dispatch Services, Inc. ("Royal") brings this action against UBS Financial Services, Inc. ("UBS"), for anticipatory breach of contract, breach of contract, and breach of the implied covenant of good faith. Royal alleges that after it provided luxury ground transportation services to UBS for approximately nine years, UBS suddenly insisted on an untenable interpretation of the contract's terms, thereby anticipatorily breaching the contract, and thereafter terminated the contract without providing the requisite 60 days' notice to Royal, thereby either

breaching the contract's express terms or the duty of good-faith performance that is implied in all contracts under New York law.

The case was originally filed in state court. After removing it to this court, UBS filed the instant motion to dismiss Royal's amended complaint. For the reasons explained below, I grant UBS's motion with respect to the anticipatory breach of contract claim, which is hereby dismissed without leave to replead. However, I otherwise deny UBS's motion, because I find Royal has alleged plausible claims for both breach of contract and breach of the covenant of good faith.

BACKGROUND

The following factual allegations are taken from Royal's amended complaint, which I must accept as true for purposes of deciding UBS's motion to dismiss. On or about August 5, 2002, UBS and Royal entered into a General Services Agreement (the "Agreement"), in which Royal agreed to provide luxury ground transportation services to UBS and its affiliated entities, employees, and clients. Am. Compl. ¶ 5, ECF No. 11; *see also* General Services Agreement ("Agmt."), Singh Aff., Ex. A, ECF No. 13-3, 13-4. Over the next approximately nine years, both parties performed under the contract. The parties modified the Agreement over those nine years by entering into a series of eight amendments that modified specific terms of the Agreement. Am. Compl. ¶¶ 7-13. All of the terms of the Agreement not specifically modified by an amendment remained in effect as originally written. *Id.*

In July 2011, UBS advanced an untenable interpretation of several terms of the Agreement and the amendments thereto, including the terms governing certain rates, the payment of tolls, and the fees to be imposed in the event of cancellations or no-shows. *Id.* ¶ 19.[1] In spite

---

[1] This communication by UBS in July 2011 does not appear to have been filed with the court.

of disagreeing with UBS's interpretation of those terms, Royal continued to perform under the contract.

In a letter dated November 8, 2011, UBS notified Royal of its intent to terminate the Agreement effective 60 days from Royal's receipt of the letter. *Id.* ¶ 22.[2] Paragraph 6A of the Agreement expressly provided UBS with the unilateral right to terminate the Agreement upon 60 days' notice for its convenience. *Id.* ¶ 23; *see also* Agmt. ¶ 6A. However, shortly after sending Royal this 60-day notice, UBS removed Royal from its list of approved vendors for transportation services. Am. Compl. ¶ 24. Once UBS removed Royal from its list of approved vendors, Royal received no further requests for ground transportation services from or on behalf of UBS. *Id.* ¶ 25.

Royal filed suit against UBS in state court on or about March 28, 2012. *See* Summons, ECF No. 1, at 4. UBS removed the action pursuant to 28 U.S.C. §§ 1332, 1441, and 1446, on or about April 25, 2012. *See* Notice of Removal, ECF No. 1. On May 24, 2012, Royal filed an amended complaint, which added a third count for breach of contract.[3] On June 22, 2012, UBS filed the instant motion to dismiss the complaint for failure to state a claim, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Oral argument on the motion was held on July 27, 2012.

---

[2] This letter was filed as Exhibit B to the Affidavit of Rabindranath Singh. *See* ECF No. 13-5. It states in relevant part as follows: "We believe that despite considerable efforts on our part, it is not possible to come to a satisfactory resolution of the outstanding issues between us. We have therefore decided to exercise our right under Article 6.A. to terminate this agreement effective 60 days from your receipt of this letter . . . ." *Id.* In a preceding letter dated October 25, 2011, Royal had declared that UBS had breached or declared its intention to breach the Agreement in numerous enumerated ways. *See* Ozen Dec., Ex. 1, ECF No. 14-1, at 4. Royal concluded that letter by stating that "[w]hile it is not our first choice, should UBS continue to state its intention to refuse to comply with the relevant terms regarding payment, such refusal shall constitute default of the Agreement by UBS, entitling Royal to terminate the Agreement and/or exercise such legal and equitable remedies as are available to it." *Id.* at 9.

[3] Royal's original complaint asserted causes of action for only anticipatory breach of contract and breach of the covenant of good faith and fair dealing. *See* Compl., ECF No. 1, at 5-9.

3

DISCUSSION

A.  *Standard of Review*

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient facts to state a claim to relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 173 (2d Cir. 2012).  In making this determination, a court should assume that all well-pleaded allegations in the complaint are true "and then determine whether they plausibly give rise to an entitlement to relief."  *Iqbal*, 556 U.S. at 679.

B.  *Analysis*

1.  *Anticipatory Breach of Contract Claim*

Royal claims that UBS anticipatorily repudiated the contract by "advancing an untenable interpretation" of its terms in or about July 2011.  Am. Compl. ¶ 17.  Royal alleges that in advancing this untenable interpretation, UBS "clearly and unequivocally express[ed] its intention not to abide by the terms" of the contract.  *Id.* ¶ 18.  The amended complaint does not specify the content of the terms that UBS attempted to untenably alter, stating only that they relate to certain rates, the payment of tolls, and cancellation or no-show fees.  *Id.* ¶ 19.

"Anticipatory repudiation occurs when, before the time for performance has arisen, a party to a contract declares his intention not to fulfill a contractual duty."  *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258-59 (2d Cir. 2002); *accord Franconia Assocs. v. United States*, 536 U.S. 129, 143 (2002) ("[T]he promisor's renunciation of a contractual duty before the time fixed in the contract for performance is a repudiation." (internal quotation marks and alterations omitted)).  New York[4] recognizes that "[t]h[e] insistence on an untenable

---

[4] The Agreement expressly provides that it is governed by New York law.  Agmt. ¶ J.  In a diversity case like this one, this court applies New York's substantive choice-of-law rules.  *Krock v. Lipsay*, 97 F.3d 640, 645

interpretation of a key contractual provision, and refusal to perform otherwise, constitute[s] an anticipatory breach of the contract." *IBM Credit Fin. Corp. v. Mazda Motor Mfg. (USA) Corp.*, 92 N.Y.2d 989, 993 (1998); *see also* 22A N.Y. Jur. 2d Contracts § 456 ("[W]here a party maintains an untenable construction of a contract on a matter of essential substance, this will be regarded as a repudiation of the contract, and may, under the doctrine of anticipatory breach, entitle the repudiating party to seek damages for the breach.").

A party faced with anticipatory repudiation may choose between two "mutually exclusive" options:

> He may (a) elect to treat the repudiation as an anticipatory breach and seek damages for breach of contract, thereby terminating the contractual relation between the parties, or (b) he may continue to treat the contract as valid and await the designated time for performance before bringing suit.
>
> The non-repudiating party must, however, make an affirmative election. He cannot at the same time treat the contract as broken and subsisting, for one course of action excludes the other. Indeed, the law simply does not permit a party to exercise two alternative or inconsistent remedies. Once a party has elected a remedy for a particular breach, his choice is binding with respect to that breach and cannot be changed.
>
> In determining which election the non-repudiating party has made, the operative factor is whether the non-breaching party has taken an action (or failed to take an action) that indicated to the breaching party that he had made an election. There is no specific time limit within which to make this election and generally, an election need not be made until the time comes when the party making the election must render some performance under the terms of the contract. At this point, either performing or failing to perform will indicate an election.

*Lucente*, 310 F.3d at 258-59 (internal citations, quotation marks, and alterations omitted). Thus, a repudiation by one party *may* constitute a breach of the contract, excusing the non-repudiating

---

(2d Cir. 1996). New York law generally honors contractual choice-of-law provisions. *See id.* (citing *Woodling v. Garrett Corp.*, 813 F.2d 543, 551 (2d Cir. 1987)).

party from further performance and entitling it to claim damages for total breach. *Fonda v. First Pioneer Farm Credit, ACA*, 86 A.D.3d 693, 695 (N.Y. App. Div. 2011); *O'Connor v. Sleasman*, 14 A.D.3d 986, 987-88 (N.Y. App. Div. 2005); *SPI Communications v. WTZA–TV Assoc. Ltd. Partnership*, 229 A.D.2d 644, 645 (N.Y. App. Div. 1996).  But a repudiation constitutes a breach only if the non-repudiating party elects to treat it as such.  *Franconia Assocs.*, 536 U.S. at 143 ("[A] repudiation ripens into a breach prior to the time for performance only if the promisee elects to treat it as such." (internal quotation marks omitted)).

Royal's allegations of anticipatory repudiation are sparse at best, lacking any detail regarding the content of the contractual terms that UBS allegedly untenably interpreted. Yet even if I were to conclude that these allegations of anticipatory repudiation sufficed, Royal has failed to state a claim for anticipatory breach by UBS for the simple reason that Royal elected not to pursue this remedy.

According to Royal's own allegations, it continued to perform its obligations under the contract after UBS's alleged repudiation in July 2011.  *See* Am. Compl. ¶ 14 ("Since in or about August 2002 *through October 2011* Plaintiff provided luxury ground transportation services to and on behalf of Defendant in compliance with the terms of the Agreement and subsequent Amendments." (emphasis added)).[5]  Thus, even if Royal could have elected to treat UBS's untenable contract interpretation as an anticipatory breach in July 2011, it instead chose to continue to treat the contract as valid, perform its own obligations under the contract, and await UBS's reciprocal performance.  Accordingly, Royal's only possible cause of action against UBS was for breach of contract by UBS at the time that UBS's performance was due.  *See*

---

[5]   Indeed, the parties executed at least one additional amendment to the Agreement after the dispute arose, clearly evidencing an intent to continue to treat the contract as valid.  *See* Am. Compl. ¶ 13

6

*Lucente*, 310 F.3d at 259 ("[A] plaintiff who elects to treat a repudiated contract as valid does not have an action against the repudiating party until an actual breach occurs.").[6]

    2.    *Breach of Contract / Breach of Duty of Good Faith Claims*

Royal argues that UBS's removal of Royal from its list of approved venders effectively terminated the contract prior to the expiration of the 60-day notice period, in violation of Paragraph 6A of the Agreement. I conclude that Royal's allegations make out a plausible claim for either breach of contract or breach of the implied duty of good faith.

Under New York law, contracts must be interpreted to accord with the intent of the contracting parties. *Greenfield v. Philles Records, Inc.*, 98 N.Y.2d 562, 569 (2002) ("The fundamental, neutral precept of contract interpretation is that agreements are construed in accord with the parties' intent."). "The best evidence of what the parties to a written agreement intend is what they say in their writing." *Id.* (internal quotation marks omitted). Thus, where the language of a contract is unambiguous on its face, it must be enforced according to the plain meaning of its terms. *Id.* at 569; *W.W.W. Assocs. v. Giancontieri*, 77 N.Y.2d 157, 162 (1990) ("[C]lear, complete writings should generally be enforced according to their terms . . . .").

However, I should not dismiss a claim based on the defendant's interpretation of a contract if the plaintiff's interpretation is also plausible. *Cf. Lucente*, 310 F.3d at 257 ("Summary judgment is only proper in contract disputes if the language of the contract is wholly unambiguous." (quoting *Mellon Bank v. United Bank Corp.*, 31 F.3d 113, 115 (2d Cir. 1994))). "Contract language is ambiguous if it is 'capable of more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement.'" *Id.* (quoting *Sayers v. Rochester Tel. Corp. Supplemental Mgmt.*

---

[6] Counsel for Royal conceded at oral argument that his claim for anticipatory breach of contract was not legally supportable and should be dismissed.

7

*Pension Plan*, 7 F.3d 1091, 1094 (2d Cir. 1993)). It is unambiguous only when it "has a definite and precise meaning, unattended by danger of misconception . . . and concerning which there is no reasonable basis for a difference of opinion." *Id.* (quoting *Sayers*, 7 F.3d at 1095). In determining whether a contract is ambiguous, "I must consider the contract as a whole, give effect and meaning to every term, and attempt to harmonize all of its terms." *Hillside Metro Assocs., LLC v. JPMorgan Chase Bank, Nat. Ass'n*, No. 10-CV-1772 (JG) (SMG), 2011 WL 5008368 (E.D.N.Y. Oct. 20, 2011) (citing *Village of Hamburg v. Am. Ref-Fuel Co. of Niagara, LP*, 284 A.D.2d 85 (N.Y. App. Div. 2001), *lv. to appeal denied*, 97 N.Y.2d 603).

Moreover, "[i]mplicit in all contracts [governed by New York law] is a covenant of good faith and fair dealing in the course of contract performance." *Dalton v. Educ. Testing Serv.*, 87 N.Y.2d 384, 389 (1995). The duties of good faith and fair dealing "encompass 'any promises which a reasonable person in the position of the promisee would be justified in understanding were included[.]'" *511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 153 (2002) (quoting *Rowe v. Great Atl. & Pac. Tea Co.*, 46 N.Y.2d 62, 69 (1978) (internal quotation marks omitted)). Although UBS is correct in stating that "no obligation can be implied that 'would be inconsistent with other terms of the contractual relationship,'" *Dalton*, 87 N.Y.2d at 389 (quoting *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 304 (1983)), the duty of good faith and fair dealing binds the parties to refrain from "do[ing] anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract[.]'" *Id.* (quoting *Kirke La Shelle Co. v. Armstrong Co.*, 263 N.Y. 79, 87 (1933)).

I conclude that UBS's removal of Royal from its list of approved venders, which effectively terminated its business relationship with Royal, plausibly constituted either a breach of the contract between the parties or a beach of the duty of good faith that underlies the

8

performance of all contracts under New York law.  Interpreting the contract as a whole, I cannot conclude as a matter of law that the contract unambiguously permitted UBS to remove Royal from its list of approved venders willy-nilly.  Royal has plausibly alleged that its elimination from that list shortly after receiving UBS's termination notice breached the 60-day notice provision in Paragraph 6A of the contract.  Alternatively, UBS's striking Royal from its list of approved venders may have violated UBS's duty to perform the contract in good faith, because this action effectively deprived Royal of the fruits of the contract, without providing the 60-day notice the parties agreed to provide.  Therefore, dismissal of Royal's claims for breach of contract and breach of the duty of good faith is not appropriate at this early juncture.  Accordingly, UBS's motion to dismiss is denied as to these claims, which I hold Royal may allege and attempt to prove in the alternative.

## CONCLUSION

Because UBS's removal of Royal from its list of approved vendors effectively terminated the parties' business relationship prior to the expiration of the 60-day notice period required under the Agreement, Royal has stated a plausible claim for breach of contract or breach of the implied duty of good faith, and UBS's motion to dismiss is denied as to these claims.  However, because the complaint does not allege a plausible claim for anticipatory breach of contract, UBS's motion to dismiss is granted as to that claim.

So ordered.


John Gleeson, U.S.D.J.


Dated: July 31, 2012
       Brooklyn, New York

9